Morning. This is case number 413-0465, Kalev Leetaru v. Board of Trustees of the University of Illinois. Attorney Martinkus is here on behalf of the appellant and Attorney Brinkman is here on behalf of the appellee. Mr. Martinkus, are you ready to proceed? Yes, thank you. Can I please report, Mr. Brinkman? The question I raise here today is, what good is a right without a remedy? And that's really where my client, Kalev, sits. If you've read the briefs, you know that I've quoted various court of claims cases that say we can't give injunctive ruling. I know there's a tension between what certain courts, public courts, maybe the Supreme Court has said, but clearly the court of claims is a legislative enactment. I think it treats itself, views itself, as some sort of a legislative court and refuses to do it. If, in fact, the circuit court lacks jurisdiction to issue an injunction, one that does not seek a present remedy or present claim, but simple prospective injunctive relief, you can talk about all the rights that my client has under this policy manual. And I know that I have been here before in this case. In Justice's book, you've listed all of the complaints. The complaints we have are remedial in nature. What we'd ask, for example, is let us see the evidence. Let us proceed in a timely fashion. Let us do all these things. And all we ask is that this state employee, the research investigating officer, Mr. Gunther, follow the rules, rules that he has given to him, rules that are designed to protect the student. He is clearly acting outside and exceeding his delegated authority. And that's what all of these cases talk about. If you look at any of the cases I quoted in my brief, the Supreme Court cases that are in biomedical, Sennpark, Ellis, all those cases by the Supreme Court, the Rockford case by the Second District, all stand for the same proposition. If you're not seeking a present claim and you're simply seeking to enjoin a state employee from exceeding his authority, the state court has jurisdiction. Whether we win or lose, that's a different issue. But it seems to me that the common thread in those cases is that the allegation is somebody's acting without statutory authority, not doing something wrong that they're authorized to do. I agree with you. But the Senn case extended beyond statutory authority, delegated authority. And if you have delegated authority that says in their manuals, it says in their bylaws very clearly, you're supposed to take all the evidence, sequester it, and then provide it to Mr. Leitroux so he can look at it, so he can defend himself. That is a limit on what the research investigator can do. He can't now say, we're not going to do any of this. The people who are bringing these allegations, they can keep it. You can't see it throughout this process. But you're supposed to somehow defend yourself. There's a big difference between some of these employment cases where there is an analysis of an employee and how they're doing and all these things. I may not like it. My client may think it's the worst analysis in the world. But there's no question that a state government through its employers would have the ability to conduct that exact process. Not here. The university is not being asked to do something that it's entitled to do. The court is being asked to enjoin a state employee from doing something it's not entitled to do. This is not a claim saying, you can go ahead and do all these things, but we don't like how you're doing it. Or this is a physics project. We have all three of these people who have come up with this theory and we don't like it and judge. Try to figure it out. I don't expect that. But this is a real simple case, really. We have a situation where we have certain rules. They're not being followed. They've been ruled not followed. And what does my guy do? Does he just not have these rules, these rights? Because that's really what we're talking about here. If you deny this and there's no jurisdiction, I can't go to the court of claims and it's a waste of my time. I can't in good faith look at my client and say, I have any reason to believe that the court of claims would enjoin the university employee from acting outside of its delegated authority. But what you've asked for in your complaint is for the trial court to enjoin the investigation. To stop it. I have, but I asked it broadly. The court may or may not agree with me. I know in your ruling, you, I believe, inferentially, had some concern about that. How can a state court interfere with the process at the university? And for 38 years I've been dealing with that every time I'm in front of this court or the Supreme Court or a federal court. It's really a difficult proposition. I understand. I really do. But my take on this is, I don't think an appellate court, a circuit court, really should get involved in the truly academic decisions. If we're talking about how this panel arrived at its decisions and so forth. But when there's a set of rules that I, or you, as lay people, compare to the people who do these cases at the university, I can read their manual and I can see that it says you're supposed to have these rights. And that's where the court has to help. Because if the university is not in a position where anybody can receive relief, then these rules are meaningless. And that's really where my client is. Right now the investigation is still ongoing. It's not been finalized. A quick decision from you to permit us to go to the circuit court and say, Judge, here's what they're doing. Help us out here. If you think it's so pathetic, then enjoin them from doing anything. If you don't, then help us out on these issues. But now there's literally nothing to do. So you tell an academician who thinks that our system of law is just, and he reads the Constitution and says, for every right, there's a remedy. And I've got to say to him, there's really not. What about the professor at Southern Illinois University who, she was a student, a doctoral student, who was denied her Ph.D. even though she had complied with everything. That case went to the Seventh Circuit Court of Appeals and Evans wrote the decision there and he said basically what the Illinois courts are saying is we, if you have the right to stick your nose somewhere, that's one thing. If you don't have the right to stick your nose somewhere, we'll do something about it. So here it seems to me, this committee and these people have the right to conduct the investigation and you're complaining about the way they're doing it. I'm complaining about the way the research officer is conducting it. I mean, it's pretty remarkable to me that the research officer, we have this. The policy says that the first committee is supposed to talk to my client and get his input into how this all occurs. When you read those regulations, a lot of it is should or may. I mean, a lot of it is discretionary the way I read it. You could be right, but I think certainly when it says should or may, and I think some of the timelines are more than should or may, but the trouble I have is that you don't have a simple just a miscalculation of dates. You have a research integrity officer who is fundamentally derailing the process. When he tells the three members of this committee, you can't, I don't want you talking to Leotro. I mean, that to me is the worst possible position a guy can take. But isn't that the preliminary people? That's not the investigative stage. But it's very important to understand that if you don't get past the preliminary stage, you never get to this. This is an incredible intrusion. My client's passed everything. He's waiting for his Ph.D. Now he can't get his Ph.D., although he's done everything, he's ready to go because of this investigation for two years. It's supposed to be 90 days, and nothing's going to happen. If you don't come in and help, it's just not going to help. With the federal case, the problem is this. The federal law is different because it says that any kind of a hearing is sufficient. I've been in the federal courts. I've argued before Judge Posner on these issues, and any sort of a hearing is okay. It doesn't matter at all. But in the state courts, when you're looking at an injunction, when you have a remedy outlined, not by me, but by the university, and they don't even come close to following it, if I can't go to the circuit court and say, Judge, just make them follow it. Make them follow their own rules. I don't understand why that's such a difficult thing. I'm not trying to impose upon the university my rules. I'm not trying to take advantage or not permit them to do what they're going to do. But if they're going to do something, and they say there's certain rights, then please enforce those rights. Please have the research integrity officer comport with it. I don't know why that's so difficult. I truly don't. With respect to the issue now, I know it's just an issue of jurisdiction at this point. If you were to reverse it, then the circuit court has to grapple with all those ideas, and whether I'm right or wrong, or what it would or would not do, it's for another day. But I can't even get my foot in the door, and I can't go around the block here to the court of claims, because they're not going to give me any help. If I look at these cases, too, the Chicago case versus the Board of Trustees, that talks about the Enabling Act. What do we do with that act? The act itself seems to me to be pretty clear. The Board of Trustees of the University of Illinois should be a body of corporate and politic, and by that name and style, should have perpetual succession and power to contract and be contracted with, to sue and be sued, provided that any suit against the Board based upon a claim sounding in its court must be filed in the court of claims. Well, the First District read that to mean exactly what it says. Of course, that wasn't necessary to their decision, even. They went off on a tangent. And then we've got a case out of the Fourth District, though, that says that enabling language doesn't do what you think it does. Well, again, Judge, you may be right. Maybe you're not going to agree with me, but I at least wanted to raise it that I think that the issue here, if I read the language when it says, provided that any suit would be sounding in the court of claims, to me at least that's one argument for jurisdiction. Let's suppose you get your injunction and you go back to the trial court, and the trial court sorts through these issues and you lose. The investigation goes forward. You lose. What happens next? Well, I mean, I'm probably done, or I guess I... Yeah, but I mean, within the university, do you lose? Well, if I... Or is there a... Are we far down the final process? Real close. The final committee has met and exonerated my client for most everything. Justice, Vice Chancellor Schiffer now has to decide what he's going to do. Is he going to agree with the report, not agree with the report, to the extent that there were some violations? Are they going to... What's he going to do? That's where we're at at this point. Depending on what he does, then there is another step or process we can go through the Chancellor's Office, and I think, if I remember, I apologize if I'm wrong on this, but I think even the Board of Trustees is the last layer. Mr. Brink probably knows more about it than I do. But yes, there are a few more internal processes that we can go through. And the question is, right now, they haven't decided yet. But you say there's been a decision somewhere along the way that has mostly exonerated your client. So why should the courts get involved, I guess, if the process is working? Because the scary part about it is, what if the university doesn't follow the recommendations? Then I'm back to square one. All I want is an opportunity to go into a trial court and say, Judge, here's what they say they are supposed to let my client have these rights. And they're not doing it. Decide what's fair. What's the main thing? There were several things I looked at under the Rules and Procedures that looked to me to be discretionary. There were maybe just one or two that I felt you had maybe a leg to stand on. What's the main one? Well, I guess the most fundamental one to me is the sequestration one. Yeah, he wasn't given access to his computer. Now, had they duplicated what was on his computer to give him a copy or anything like that? Nothing like that. Now, finally, at the very end, after the whole thing is done, now they make some arrangement, you can go see the stuff. But I've never in my life, doing this for as long as I have, been in a position where you're accused of something, they take all the evidence, don't let you see them, when there's a clear sequestration policy, separate policy independent of the policy procedure. That's a big thing in academia. It really is. That if you're charged with something, you need to have access to your material to defend yourself. I mean, it's fundamental. How do you defend yourself? No. And in fact, at the first meeting I have him on tape where he says he's been advised not to give it. Okay, so now here I'm in a position... Well, you can see where they wouldn't turn over the original. They've got to sequester that and keep that. But now he's gotten a copy of it. Well, after the fact, I think this reason is, if you want to go now look at this, after they've met, after they've decided, go ahead and do it. I mean, it's an upside down process. I've never seen anything like it. I've never seen anything like it. So that would be at least one of the things here. But he would be able to defend himself in the next step if they should come back against him. Not really the next step, though. See, the step is done. The process is concluded. Now it's just how the university will take the recommendations, what they'll do. It's, you know, academics, I don't know, they're a little different animals in some respect, I think. And I think most often judges, in my experience, they don't want to touch it because they're kind of people out there and they do things differently. I get that and I don't quarrel with that too much. But when it comes to really a fundamental thing like not being able to have access to the materials upon which you're being charged, that's just so fundamental. I don't know why a court can't come in and say, look, you are in violation of your own policies. This is fundamental. Give him access. And that's really what we look for. Okay, but if he's gotten access already, are we looking at something that's moot? Well, you know, that's a really good question because I don't know, at this point, I don't think he ever got access meaningfully. I really don't. He had already met, he met with the committees, he never had access. During our initial meeting with him, when the three professors had all the questions and hours and hours, he had never seen the material still. So at the moment when there was an opportunity to actually put on some defense, he had nothing, he had no access to it. What would they say to you when you requested an opportunity to see the material? Mr. Gunther would pause and I said, please put this on the record. I've been told I'm not supposed to give it out. You know, stuff that makes the little hair I have left just kind of stand right up. Who would tell him not to do that? I don't know. And he didn't disclose that? He didn't disclose it, no. It was double secret. Yeah, I mean, I don't know. And you were communicating with a woman attorney, she was... Laura Klauer. Yeah, what was her position? University Counsel? She was University Counsel, right. Inside, internal misdemeanors, outside, obviously. So now, it sits at a Vice Chancellor level. Yes, sir. And all he or she is doing is reviewing the report and the recommendations. Deciding what to do. But you have access to the report. Yes. That's why I know that, in my opinion, he's been exonerated for most of these things. So if the Vice Chancellor adopts the recommendations of the report, is your guy happy? Well, I don't know, because it depends what he says. If he says, I adopt these recommendations, but you're not going to get your degree, probably not. If he says, I adopt these recommendations and we hereby sanction you or reproach you or something, probably. But the real scary part, from my perspective, is I have no access to anything. I have no ability. If this goes really south, I can't, unless you reverse this and say the court leaves the jurisdiction to consider these issues. Whether or not, and again, my issue is really very, very narrow. I can't control what the university will do with this thing. But if the judge, if the trucker, were to find that, based upon the manner in which this was conducted, it should be reconducted or something. That's my position. I know that university personnel deal in ways that I don't get. And I know that I'm not going to be able to go and successfully proceed these cases, typically through the circuit court, because I don't like their decision. I get that. My only beef is that when you have all these rules and you fundamentally don't let me see the materials, you don't let me see the information upon which you claim I've done these things, how can that even become close to fair? That's all. How soon do you think you're going to get a decision from the vice chancellor? I don't know. How once he had it on his desk, say? Months. Do you have any access to the vice chancellor? No, sir. Like you can't file a supplemental? No. Because you now have had some access. Yes. My client was committed to respond to the report, which he did, and now it's sitting. And we have a committee waiting to give him his degree, because if you remember, this really had nothing to do with his degree. I mean, Mr. Leiterow is a pretty remarkable person in this field. And all of this is difficult to watch, from my perspective, because you have a young student here who's done remarkably well, is worldwide known, and now we're sitting in this chaos, and we can't get this concluded. And if it goes south and goes really bad, I have no access to anybody unless there's some jurisdiction. I'm not going to get anything in the court claims. That's just reality. We can discuss it intellectually, academically, but it's not going to happen. I think we all know that. And if I don't have at least some ability to have the circuit court look at this stuff, for the limited purposes that I've asked, I don't get it. Here's the other question. The ultimate question, I guess, is if the court of claims has the power and just won't exercise it, how does that give us jurisdiction? I don't think it does. I think that my argument, I think, really has to do with the reality of my situation. Based upon the constitutional statement, every right should have a remedy. I don't think you can have jurisdiction based upon the refusal. I think you do have jurisdiction independently. This is clearly not a present claim. We've not sought damages. Again, the circuit courts attempt to rewrite our complaint or have the defendant rework it in such a manner so that now it doesn't back-seek present damages. You can't do that. Same case, these cases say that. I couldn't really find a case that really defines what is a present claim. Yeah, you're probably right. They all talk about it, but they don't tell you what it is. I think you're right. The only way I can look at it is one that seeks really damages. That's what I think all these cases talk about. If you look at the pleadings in these cases, the ones, the Senn case, the biomed cases, there are those cases, or many of the cases they set off, all of those cases seek damages. We didn't seek any damages. Yeah, that's easy. That's easy when they do that. But why isn't seeking an injunction to terminate an investigation of the university, why isn't that a present claim? Because you're seeking to do something that's currently ongoing. I think the present claim concept, from my perspective, is something that would result in the state of Illinois, in this case the France University, having a judgment against it, controlling its future actions, things of that nature. This does not do that. All this does is, on an intermediate plane, say, look, judge, help us by making them give us the rights we're entitled to. I'm not saying that the judge would say, I'm throwing it out, you can't proceed. I'm probably naive if I think that. But I can certainly ask the judge to say, go back and make them do what they're supposed to do. That's how I see this. You can ask. So you're saying, I want to ask. I might not get what I'm asking. Yeah, I might not get it at all. I realize that. But, boy, I should at least be able to knock on the door, shouldn't I? At least say, hey, this doesn't sit right. This smells. This is not right. That's really how this is. I look at this stuff and I just shake my head. How can you do this to this guy? Give him a shake. He loses, he loses. But not to even let him have the minimal due process rights that any one of us would think about. Hesitation. That's a minimal right. To see what in the heck you're talking about. You gather all my stuff, you keep it, you won't let me see it. How can I answer these questions? You're asking these questions of me, you won't let me see my stuff. Thanks, Mr. Martinez. You'll have time on rebuttal. Thank you. Mr. Brinkman. Thank you, Your Honor. I praise the court. Mr. Martinez. I'm sorry. I'm sorry. This court has recognized the distinction between misconduct within the scope of a state official's duties and misconduct that is alleged to have been made by a state official that is outside the scope of his duties. The trial court in this case relied upon that distinction and correctly holding that the court of claims has jurisdiction in this case. Here the complaint alleges that the investigation did not comply with the university's rules. But the complaint clearly shows that the investigation itself was something that was within Mr. Gunther's duties, the defendant. Howard Gunther is the campus research officer. It's his job at the university to do exactly what he was doing at the time the complaint was filed, and that is to investigate complaints of academic misconduct. The core mission of the university is to manage its academic affairs, and none is more important than academic integrity. He acted not on his own volition, but only after receiving a very serious complaint of academic misconduct against Mr. Lattaro. The allegation that he failed to follow the policies in conducting the investigation does not mean that in conducting the investigation he was acting outside the scope of his duties. The trial court was correct in finding that he did not exceed his authority. For the sake of argument, Mr. Brinkman, let's assume everything that Mr. Martinkus has said is true, that his client was denied access to his own materials in order to defend himself in the university process. How does he ever get any help from anybody if he can't come to the circuit court, since the court of claims apparently has a policy of not issuing injunctions? In the preliminary stages of the investigation, there were problems with finding where all the data that he's accused of misappropriating was located. Some of it was found, and this is in the exhibits to the complaint, at a computer that he controlled at the University of Tennessee. Some of it was found without attribution on publications that he was using in his Ph.D. degree. And they did not want to give him access to his computer with the possibility that he would copy things off of the computer data that they didn't want him to misappropriate, that he would transfer it. And so there was a delay in getting him access to those computers that were sequestered. He did get access, ultimately. But in a timely fashion in order to defend himself? That's debatable, I suppose. I mean, there certainly would be a question about that. But I think that the particular circumstances of this case, as I understand it, involving misappropriation of metadata, which is thousands and thousands of files, each file containing hundreds of documents, made it a more complex investigation, at least in the preliminary stage. Before the full investigation, I believe he did have access and he was able to access all of the information in order to respond to the charges. Well, that's exactly the opposite of what Mr. Martinkus is telling us. Well, we have a disagreement. A lot of this is outside the record, and I apologize for that, but that's my understanding. I do know that he was granted access to the information. But we don't have a sufficient chronology to determine exactly whether before the final hearing and before any recommendation went to the Vice Chancellor that he had the opportunity to use those materials to respond. Well, I think Mr. Martinkus acknowledged that he did. But, again, that's not part of this record. And I think that the issue really before this court, first of all, is whether even if the policies and procedures were not followed, is that outside the scope of the duties of this university. Well, if his duties are to either restore or preserve academic integrity, if there is a serious dispute about access to those materials which apparently prove or disprove misappropriation and play an integral part in the hearing process and in the recommendation, how does it preserve academic freedom to only give one side access to that in a timely fashion? It may not. But that's really not the issue before this court. The issue before this court is whether this state officer was acting outside of the scope of his duties and whether a judgment in this case could operate to control the actions of the state or subject it to liability. I think the trial court correctly held that a judgment could operate to control the actions of the state and could subject the state to liability. How? Well, as I indicated before, a core mission of the university is to manage its academic affairs to preserve academic integrity. That's exactly what was going on here. To stop an investigation that was ongoing for over a year... Now the investigation is over. Well, I'm talking about at the time the complaint was filed. To stop that investigation at that point in time would certainly interfere with the university's management of its academic affairs. Did the complaint seek to stop it, period, or to stop until the materials were provided? Period. Period. Yeah. There was no reference in the complaint to until this happens or until that happens. Secondly, the complaint alleges injury to reputation. It alleges that there are grant funds that would be lost, inability to complete a Ph.D. degree. These are injuries. It's paragraph 101 of the complaint that could be the subject of money damages. Judge Jones recognized that in finding that not only could this judgment control the actions of the state, but it could subject the state to liability. So while the complaint in form did not seek money damages, in substance it could subject the state to liability. And that's what Judge Jones found. I think he also correctly held that the complaint stated a presence claim. The due process claim is based upon activity that happened before the complaint was filed. Allegations that there were past acts that were arbitrary and capricious by Howard Gunther. The complaint then sought to stop a present investigation, one that had been ongoing for approximately a year. And, again, the complaint is carefully worded to try to avoid finding that it is a present claim. But I think the trial court judge in this case looked at the substance of the complaint and not the form of the complaint in finding that it was a present complaint. What do you think present claim means? Well, good question. I think that to me it means a claim that deals with seeking relief involving a present issue. In this case, seeking relief involving a present investigation by injunctive relief. You know, there are a lot of cases that allow somebody to come into court and seek an injunction against the state. So how do those cases not deal with a present claim? Well, the City of Chicago versus Board of Trustees University of Illinois case is the one that the plaintiff is relying on in this case. In that case, the relief sought was a declaratory judgment. And the Illinois Supreme Court has held that a declaratory judgment is not a present claim. Without really explaining what a present claim is. But then they also held that the declaratory action involved a non-discretionary duty. In this case, Howard Gunther, in conducting the investigation, was exercising discretionary authority that he had as the research integrity officer. He has a lot of discretionary authority, I think, when I looked at the rules of procedure. But there are a few things in there that seem to me to be more mandatory, let's say, than discretionary. The complaint doesn't really parse those out here. It basically says that the policies and procedures were not followed. In other words, he did his job improperly or incorrectly. But it doesn't get around the fact that this was his job. In other words, the investigation was within the scope of his duties. The plaintiff also argues that the Enabling Act confers jurisdiction because it's not sounding in tort. The Court of Claims has jurisdiction over many, many different types of claims, not solely claims sounding in tort. Well, the Enabling Act seems to me to be more specific than the Immunity Act. Would you agree with that? I would. So what's that language mean? What it refers to, tort claims. I would assume it means personal injury claims, primarily. Defamation would be a tort claim. Again, here, injury reputation is alleged in this complaint. The City of Chicago case that's relied on by the plaintiff, as I think, Judge Pope, you recognize, does not rely on the Enabling Act for its findings. That was dicta, and so the Enabling Act doesn't prohibit the Court of Claims from hearing cases that seek the type of relief that could be available here, such as breach of contract, defamation, money damages for due process violations. So if we affirm what is the plaintiff's remedy? Filing in the Court of Claims. Do you agree with opposing counsel that it's pretty much a useless act to file with the Court of Claims? I defend many, many cases in the Court of Claims, and I don't think that it's useless. I also agree with Mr. Martinkus that it's unlikely he could get injunctive relief there, but he could get contract damages. Part of this case is in the context of employment. The other part of it is in the context of Mr. Letaru's status as a student. But in either case, it could be a contract basis for a claim in the Court of Claims. And if there's defamatory conduct that injures his reputation, that could be heard in the Court of Claims. So he could get money relief in the Court of Claims. I don't think that would be a useless exercise if, indeed, he has a valid claim. How can there be due process if the plaintiff was denied access to materials necessary to defend himself? I don't know that there could be. Well, that's what they're alleging happened here, isn't it? They did allege that in the complaint, yes. Well, you acknowledged that because, and I don't know if this would be accurate, that the university somehow had a proprietary interest in some of this metadata and was concerned that it was located in two or three different places, that the university placed a priority on not just showing him the stuff immediately, that it needed to be either parsed out or protected or something like a protective order. That would have delayed the turnover. So that could be a denial of due process, in theory, just the delay. And, well, I don't think it was in this case. And in answering Justice Turner's question, I was not intending to concede that there was a violation of due process in this case. I understand. But my point is that jurisdiction depends on whether or not the state officer was acting outside the scope of his duties, and in this case he was not, and whether or not a judgment in the circuit court could operate to control the actions of the state What does the academic integrity of what has already occurred have to do with what the plaintiff might do with this material in the future if he's granted access to it? That's a separate issue between he and the university. That would be a separate complaint or separate investigation by you. Those two things are separate. And how does Howard Gunther, acting as this academic integrity officer, look out for the financial interests of the university? Because that's really what we're... If it's proprietary stuff or stuff that belongs to us, it doesn't belong to the PhD candidate, that's what we're talking about. He was exercising his discretion to manage this investigation in a way that I think he felt was appropriate, trying to balance all of the competing interests. That's the most I can say. Would you concede that one of the competing interests was the financial interests of the university in its material? You know, I haven't seen financial versus academic. I would agree that it was certainly the academic interests of the university. I'm not aware that this was a profit. How is it in the academic interests of the university? These are studies, these are social studies that are analyzing data for publication purposes to advance knowledge in the social studies field. So how do you advance knowledge in the social studies field by restricting the person who participated in, I assume from the way this has developed, has participated in either the creation or the development of those studies? By protecting the university's proprietary interest in them and preventing that person from misappropriating and misusing. Or moving things around where it couldn't be found again or something like that is what I took it as. Yes. I mean, to the extent that the studies and the research is funded by outside funding agencies, there could be a financial aspect to it. Correct. The last argument is the no remedy argument. And I think that the Best v. Taylor case that we cited in our brief actually answers the question on this. And there the Supreme Court of Illinois held that the remedy provision is a statement of philosophy and it's not the grant of a specific remedy. So there is no right to injunctive relief in the Court of Claims, under the Constitution. If there are no further questions, I conclude my argument. Thank you. Thank you, counsel. Mr. Martinkus. Just a couple of points. You know, as an officer of the court, I can tell you this. Never did we receive the documents throughout the inquiry process. When we had the one meeting at the investigative process, when the members all asked questions, we didn't have any of the documents. We asked Gunther to stop the meeting right there. I was there. And give us the documents. He said he won't do it. So then after all this happens, my client gets an email. Oh, now you can go look at the records. What a joke. I mean, now when it has no meaning in anything. So that's one thing. And then the other irony of this whole case is Mr. Brinkman and I argued a case 37 years ago in this courtroom. Well, over there. Involving Jerry Tanner. Tanner v. The University of Illinois. Probably the longest non-probate case throughout the history of our court. 20-some years. In that particular case, this addresses these issues which Justice Peck, you raised. In that case, Justice Birch Morgan, that's how long this case was ago, he divided the mandamus action was permitted to go through the court of claims. Our damages action, because we did have a separate claim for damages, was required to be brought in the court of claims. Circuit court, mandamus, the exact same concepts that applied here. And that's what this court ruled, and that's what we did. The issues concerning mandamus, declaratory relief, injunctive relief, those are not present claims in the context of a damage claim sounding toward a contract in which the state might have to pay a judgment. It's in that concept that I think we're talking about. All I can ask is that you consider it. I think you obviously know the issues. I hope that whatever you do, you do quickly because I think my client needs some relief. I have one last question, Mr. Martinez. When you answered the report or sent your response to the report to the vice chancellor, had you already had access, did your client already have access to his data? Judge, I can't honestly tell you. I don't want to mislead you because I don't remember exactly. All I remember is that at some point in time, well after meeting, well after hours of questions posed by these members to which my client said, I don't have the documents, well, well after that, some emails give us, oh, by the way, you want to get access to your documents now, okay. I don't remember the exact sequence. I guess what I'm asking you though is, and I hope you would remember this, whether you were able to incorporate any supportive data from his access in your response. It wasn't my response. It was his, I thought. The process doesn't permit. I can't even really participate. The lawyers don't get to really do anything in these meetings. You can advise your client. You can make a recommendation. Was it a written response though? My client did a written response to the findings. Right. So once they've already decided, once they've already ruled on what the thoughts are, once they've considered the evidence, now my client gets access and now he can respond to it. So, I mean, I don't remember, and that's just the truth. All right. Well, standard recess until the readiness of the next case.